UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **WOODROW OVERTON ET UX** | **CIVIL ACTION NO. 22-CV-00292-SDD-SDJ** |
| **VERSUS** | **U.S. DISTRICT JUDGE SHELLY D. DICK** |
| **LIBERTY PERSONAL INSURANCE COMPANY ET AL** | **MAGISTRATE JUDGE SCOTT D. JOHNSON** |

## MEMORANDUM IN SUPPORT OF MOTION TO REMAND

MAY IT PLEASE THE COURT:

### *Procedural Posture*

The Plaintiffs, **WOODROW "WOODY" OVERTON** and **CYNTHIA "CYNDI" OVERTON**, filed suit against the Defendants, **LIBERTY PERSONAL INSURANCE COMPANY** (hereinafter "Liberty") and **FRENCH SETTLEMENT WATER COMPANY, INC.** (hereinafter "French Settlement"). Generally, the Plaintiffs sued their homeowner's insurance company, Liberty, because it failed to properly and fairly compensate the Plaintiffs for their property losses relative to Hurricane Ida[1]. Liberty dispatched its agents/employees to render mitigation, remediation, water removal and drying of the Plaintiffs residence[2]. Those agents/employees removed debris from the Plaintiffs' residence[3] and placed all of it onto the yard of the Plaintiffs' residence. In doing so, the company obstructed the water meter and/or access to the water meter[4]. Also, they sued their water company, French Settlement, for assessing a fine/fee because access to the water meter was obstructed and, for the same reason, it arbitrarily increased the monthly water bill to an excessive

---

[1] See, *Petition for Damages*, paragraphs number 1, 10-84 and *Prayer for Relief*, number 2.
[2] See, *Petition for Damages*, paragraph number 81.
[3] See, *Petition for Damages*, paragraph number 82.
[4] See, *Petition for Damages*, paragraph number 84.

1

and unreasonable amount[5] despite the Plaintiffs not using any water. The Plaintiffs filed their *Petition for Damages* in the 21st Judicial District Court for the Parish of Livingston, State of Louisiana, because they believe it is the court of competent jurisdiction and proper venue[6].

Liberty filed a *Notice of Removal* and contends French Settlement was "not been served" and "improperly joined." The issue of service is irrelevant in determining jurisdiction as the court examines citizenship of all named parties. Nevertheless, Liberty's *Notice of Removal* is premised on erroneous assumptions and those assumptions do not vest this Court with jurisdiction. As such, a remand is warranted.

### *Facts As Contained in the Petition for Damages*

In the months and years preceding August 29, 2021, the Plaintiffs owned immovable and movable property situated in the Community of Maurepas, Parish of Livingston, State of Louisiana at municipal address: 14738 Paradise Road, Maurepas, Louisiana, 70449[7]. The Plaintiffs acquired, funded, and owned a policy of insurance issued by Liberty, with policy number H3F29807798470 (hereinafter "Homeowner's Policy").[8] On or about August 29, 2021, Hurricane Ida caused extensive damage to the Plaintiffs' immovable property and residence[9]. The Plaintiffs' dwelling, the structure's roof, contents and personal property sustained severe damage because of Hurricane Ida[10]. Despite these damages and the residence being uninhabitable, Liberty

---

[5] See, *Petition for Damages*, paragraphs number 1, 85-93 and *Prayer for Relief*, number 2.
[6] See, *Petition for Damages*, paragraphs number 3 (The Plaintiffs aver there is no complete diversity between the parties in controversy to vest a federal court with jurisdiction) and 8 (This Court [21st Judicial District Court] has jurisdiction over the matters complained of herein by virtue of Louisiana Code of Civil Procedure Article 2. Venue in this Court is proper pursuant to Louisiana Code of Civil Procedure Articles 42, 74, and 76).
1, 85-93 and *Prayer for Relief*, number 3.
[7] See, *Petition for Damages*, paragraph number 9.
[8] See, *Petition for Damages*, paragraph number 10.
[9] See, *Petition for Damages*, paragraph number 12.
[10] See, *Petition for Damages*, paragraph number 13.

insufficiently compensated the Plaintiffs for their covered losses under the Homeowner's Policy, mishandled the claims process and harassed the Plaintiffs[11].

Moreover, Liberty retained, hired, and employed a company to render mitigation, remediation, water removal and drying of the Plaintiffs residence[12]. The company working on behalf of Liberty and rendering mitigation/remediation removed debris and materials from the Plaintiffs' residence[13]. The company working on behalf of Liberty placed all debris and materials from the Plaintiffs' residence onto the yard of the Plaintiffs' residence. In doing so, the company obstructed the water meter and/or access to the water meter[14].

French Settlement provided the water meter and water service to the Plaintiffs' residence and home[15]. French Settlement claimed it could not read and/or access the water meter and either assessed or threatened to assess a $2,000.00 fee for debris removal so that its agents/employees could read and access the water meter[16]. French Settlement arbitrarily and capriciously assessed the Plaintiffs' water bill even though the water valve was closed and shut off by the Plaintiffs[17]. French Settlement arbitrarily and capriciously charged the Plaintiffs for water the Plaintiffs were not using due to the actions by the agents/employees of Liberty[18]. The Plaintiffs show they were forced to pay for a thing not due to French Settlement and they seek a return of all such payments from French Settlement[19]. The Plaintiffs show they *were assessed a fine/fee of $2,000.00* for a thing

---

[11] See, Petition for Damages, paragraph number 14-84.
[12] See, Petition for Damages, paragraph number 81.
[13] See, Petition for Damages, paragraph number 82.
[14] See, Petition for Damages, paragraph number 84.
[15] See, Petition for Damages, paragraph number 85.
[16] See, Petition for Damages, paragraph number 86.
[17] See, Petition for Damages, paragraph number 87.
[18] See, Petition for Damages, paragraph number 88.
[19] See, Petition for Damages, paragraph number 89.

not due to French Settlement and they seek a cancellation of said assessment/fine, which may have been filed as lien against the Plaintiffs' immovable property[20]. (Emphasis supplied) Cf. *Notice of Removal*, p. 5, number 7.

### *Specific Causes of Action Against French Settlement Contained in the Petition for Damages*

The Plaintiffs clearly articulated their causes of action against French Settlement in their *Petition for Damages,* and they are:

91.

As a result of the actions, conduct and statements of the Defendant, **FRENCH SETTLEMENT WATER COMPANY, INC.**, the Plaintiffs, suffered injuries and damages thereby entitling them to recover damages as follows:

  i.   Past, present and future pain and suffering;

  ii.  Past, present and future mental anguish and anxiety;

  iii. Past, present and future financial losses;

  iv.  Intentional infliction of emotional distress and mental anguish;

  v.   Negligent infliction of emotional distress and mental anguish;

  vi.  Abuse of rights;

  vii. Conversion;

  viii. Unjust enrichment;

  ix.  Receipt of a thing/payment not due

92.

Additionally, the Plaintiffs show there is no legitimate motive for the exercise of the rights by the Defendant, **FRENCH SETTLEMENT WATER COMPANY, INC.**

93.

Further, the exercise of the rights of the Defendant, **FRENCH SETTLEMENT WATER COMPANY, INC.**, violates moral rights, good faith and/or elementary fairness.

---

[20] See, *Petition for Damages,* paragraph number 90.

### *Prayer for Relief Contained in the Petition for Damages*

Liberty represents, "[t]here is no allegation of joint, several or alternative liability that would connect Liberty and [French Settlement]." <u>See</u>, *Notice of Removal*, p. 5, number 8. As noted above and contained in the *Petition for Damages*, Liberty employed a company to render mitigation, remediation, water removal and drying of the Plaintiffs residence[21]. The company working on behalf of Liberty removed debris and materials from the Plaintiffs' residence[22]. The company working on behalf of Liberty placed all debris and materials from the Plaintiffs' residence onto the yard of the Plaintiffs' residence. In doing so, the company obstructed the water meter and/or access to the water meter[23]. The obstruction of the water meter is the basis for French Settlement assessing a $2,000.00 fee for debris removal[24] and excessively charging the Plaintiffs for water they were not using[25]. It is perplexing why Liberty argues the Plaintiffs' claims against French Settlement has "no real connection to the claims against Liberty." *Notice of Removal*, p. 5, number 5. But for Liberty's actions, the Plaintiffs would not have incurred these unreasonable fees and expenses from French Settlement.

Additionally, a plain reading the *Petition for Damages* and its *Prayer for Relief* shows:

WHEREFORE, the Plaintiffs pray:

\*   \*   \*

2. That after lapse of all legal delays and due proceedings there be judgment rendered herein in favor of the Plaintiffs and against the Defendants individually, jointly, and in *solido* in an amount to be determined by this court together with legal interest from date of judicial demand until paid, statutory penalties, attorney's fees (if applicable) and for all costs of these proceedings;

---

[21] See, Petition for Damages, paragraph number 81.
[22] See, Petition for Damages, paragraph number 82.
[23] See, Petition for Damages, paragraph number 84.
[24] See, Petition for Damages, paragraph number 86.
[25] See, Petition for Damages, paragraph number 88.

* * *
## *Law and Argument*
### *a) Original Jurisdiction*

Like all other governmental powers, the judicial power of the United States is found in the Constitution. Federal district courts are courts of limited jurisdiction. Federal courts are courts of limited jurisdiction, which may exercise only those powers authorized by the Constitution and statute. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994). They are empowered to hear only such cases as are within the judicial power of the United States, as defined in the Constitution, and have been entrusted to them by a jurisdictional grant by the Congress. Bender v. Williamsport Area School District, 475 U.S. 534, 89 L. Ed. 2d 501, 106 S. Ct. 1326 (1986). With respect to civil disputes, federal jurisdiction is limited to those matters either arising under the Constitution, laws, or treaties of the United States, or which involve citizens of different states and an amount in controversy in excess of $75,000. 28 U.S.C. §§ 1331, 1332. It is therefore, "*presumed* that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen, 511 U.S. 375, 377, (1994) (emphasis added).

It is well settled that the party seeking to invoke the jurisdiction of federal courts must demonstrate that the case is within the competence of the court. Simon v. Wal-Mart Stores, Inc., 193 F.3d 848 (5th Cir. 1999); Luckett v. Delta Airlines, 171 F. 3d 295 (5th Cir. 1999). The presumption is that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter does exist. Turner v. Bank of North America, 4 U.S. 8, 1 L. Ed. 718 (1799). For purposes of removal jurisdiction, the court is to look at the case as of the time it was filed in state court–prior to the time a defendant filed an answer in federal court. Wisconsin Department of Corrections v. Schacht, 524 U.S. 381, 118 S. Ct. 2047, 141

L. Ed. 2d 364 (1998). Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand. Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720 (5th Cir. 2002); Acuna v. Brown & Root, Inc., 200 F.3d 335, 339 (5th Cir. 2000).

### b) *Removal Jurisdiction*

The controlling statute in this matter is 28 U.S.C. §1332, which provides, in pertinent part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ---
> (1) citizens of different States;...

When a plaintiff challenges the propriety of a defendant's removal, the defendant carries the burden of showing the necessary facts to support the court's exercise of removal jurisdiction. See Jernigan v. Ashland Oil, Inc., 989 F.2d 812, 815 (5th Cir. 1993); Willy v. Coastal Corp., 855 F.2d 1160, 1164 (5th Cir. 1988); McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). Further, the defendant must show that it complied with removal procedures. 16 Moore's Federal Practice § 107.11(3), 107.15 (2)(g)(ii) (3rd ed. 2003). Any doubts about the propriety of removal are construed in favor of remand. Butler v. Polk, 592 F.2d 1293, 1296 (5th Cir. 1979). The removal statute should be strictly construed against removal and all doubt should be resolved in favor of remand. Shamrock Oil and Gas Corp. v. Sheets, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). The right to remove actions from state court in accordance with 28 U.S.C. § 1441, occurs only when a federal court has jurisdiction over the subject matter of the litigation. 14B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 3723 (3d ed. 1998). There is a strong presumption against removal. Gaus v. Miles Inc., 980 F, 2d 564 at 566 (9th Cir. 1992). This is so because, in major part, federal courts have limited jurisdiction and removal deprives plaintiffs of their chosen forum. For the purposes of diversity jurisdiction, "a

corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

### c) *Citizenship of the Parties*

Federal district courts have original jurisdiction over all civil actions where the matter in controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a)(1). However, in order for this Court to exercise diversity jurisdiction, there must be complete diversity between all Plaintiffs and all Defendants. Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89, 126 S. Ct. 606, 613 (2005) (*citing* Caterpillar Inc. v. Lewis, 519 U.S. 61, 68, 117 S. Ct. 467, 136 L. Ed. 2d 437 (1996)) (emphasis added). In the case before this Court, on the face of the Plaintiffs' *Petition for Damages* it is clear that diversity does not exist. Plaintiffs are citizens of Louisiana[26], Liberty claims[27] it is a citizen of New Hampshire and Massachusetts, and French Settlement is a citizen of and domiciled in Louisiana[28].

While Liberty acknowledges this lack of complete diversity, it nonetheless urges this Court to exercise diversity jurisdiction claiming French Settlement was "improperly joined," and imply it was fraudulently joined. Because these named individuals are liable to Plaintiffs for their acts and because Liberty has failed to demonstrate that any party has been fraudulently joined to this action, it must be remanded for lack of subject matter jurisdiction.

---

[26] See, *Petition for Damages*, introductory and very first paragraph. Liberty's *Notice of Removal*, p. 3, number 18.
[27] Liberty's *Notice of Removal*, p. 4, number 21.
[28] See, *Petition for Damages*, paragraph 1 (B). Liberty does not dispute French Settlement is a citizen of and domiciled in Louisiana.

### d) *Liberty Fails to Prove French Settlement Was Fraudulently Joined*

The removing party bears a heavy burden of persuasion to demonstrate fraudulent joinder. Carriere v. Sears, Roebuck & Co., 893 F.2d 98, 100 (5th Cir. 1990); B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981) ("strict standard" for establishing fraudulent joinder); Green v. Amerada Hess Corp., 707 F.2d 201, 205 (5th Cir. 1983); Scott v. Chevron U.S.A., Inc., 824 F. Supp. 613, 614 (N.D. Miss. 1993). Such a claim must be pled with particularity (See, Fed. R. Civ. P. 9(b)) and supported by clear and convincing evidence. Griggs v. State Farm Lloyds, 181 F.3d 694, 699 (5th Cir. 1999); B., Inc., 663 F.2d 545, 549 (5th Cir. 1981). All doubts are to be resolved in favor of remand to state court. However, courts may not consider post-removal filings when reviewing a fraudulent joinder claim to the extent they raise a new cause of action or theories not raised in the controlling petition filed in state court. Griggs, 181 F.3d 694, 699–702 (5th Cir. 1999) (courts may examine post-removal affidavit to extent it clarifies or amplifies claims actually alleged in amended petition controlling when suit dismissed).

A removing defendant must prove either that (1) there is no possibility that the plaintiff will be able to establish a cause of action against the nondiverse defendant in state court[29] or (2)

---

[29] Mumfrey v. CVS Pharm., Inc., 719 F.3d 392, 401-402 (5th Cir. 2013) (improper joinder established by showing actual fraud in pleading of jurisdictional facts or inability of plaintiff to establish cause of action against non-diverse party in state court; defendant established individual defendants were improperly joined by showing plaintiff had no possibility of recovery against them); Heritage Bank v. Redcom Labs., Inc., 250 F.3d 319, 323-324 (5th Cir. 2001) (applicant was fraudulently joined in letter-of-credit issuer's declaratory judgment suit seeking to determine issuer's duty to honor presentment, as applicant had interest in outcome, not current controversy, and claim was not yet justiciable); Rodriguez v. Sabatino, 120 F.3d 589, 591-592 (5th Cir. 1997) (plaintiff could not possibly prevail against fraudulently joined defendant in negligence suit because defendant had no duty to intervene to prevent underage drinking at party).

there has been outright fraud in the plaintiff's pleadings of jurisdictional facts. Griggs, 181 F.3d 694, 699 (5th Cir. 1999); Green v. Amerada Hess Corp., 707 F.2d 201, 205 (5th Cir. 1983).

Joinder will not be deemed fraudulent unless there clearly can be no recovery under state law on the cause alleged or on the facts as they exist when the petition to remand is heard. Impossibility of recovery must be established in order to show that the plaintiff had no real intention of obtaining a joint judgment, and that there was no colorable ground for the claim. Cumpian v. Alcoa World Alumina, L.L.C., 910 F.3d 216, 221 (5th Cir. 2018) (no fraudulent joinder because removing defendant did not negate possibility allegedly fraudulently joined defendant's negligence contributed to plaintiff's injuries). The court must determine whether there is "arguably a reasonable basis" for predicting that the state law might impose liability on the facts involved. If that possibility exists, an assertion of the expectancy is not a sham, and is not fraudulent in fact or in law. Elam v. Kansas City S. Ry. Co., 635 F.3d 796, 812–813 (5th Cir. 2011) (no diversity because train engineer and plaintiffs were all residents of Mississippi and plaintiffs alleged facts providing reasonable basis to predict engineer was negligent). Under this standard, if there is any possibility of a valid claim against the nondiverse defendant, there is no diversity, and the case is properly cognizable only in the state courts. Id. It should be emphasized that this does not mean that the plaintiff must be able to demonstrate that he or she will, in fact, prevail, or even that the plaintiff could show that he or she could survive a motion for summary judgment filed by the in-state defendant. Crowe v. Coleman, 113 F.3d 1536, 1541–1542 (11th Cir. 1997). The jurisdictional inquiry must not be conflated with an adjudication on the merits. GranCare, LLC v. Thrower, 889 F.3d 543, 549 (9th Cir. 2018) (standard that equates fraudulent joinder with Fed. R. Civ. P. 12(b)(6), concerning failure to state claim on which relief can be granted, improperly conflates jurisdictional inquiry with adjudication on merits).

As noted in <u>Travis v. Irby</u>, 326 F.3d 644 (5th Cir. 2003), in summing up federal law, <u>Moore's Federal Practice</u> states at one point: "To establish fraudulent joinder, a party must demonstrate ... the *absence of any possibility* that the opposing party has stated a claim under state law." 16 <u>Moore's Federal Practice</u> § 107.14[2][c][iv][A] (emphasis added). It then comments: "The ultimate question is whether there is arguably a *reasonable basis* for predicting that state law might impose liability on the facts involved." <u>Id.</u> (emphasis added.) Although these tests appear dissimilar, "absolutely no possibility" vs. "reasonable basis," we must assume that they are meant to be equivalent because each is presented as a restatement of the other.

Any argument that a gap exists between the "no possibility" and "reasonable basis" of recovery language was recently narrowed, if not closed. <u>Badon v. R J R Nabisco, Inc.</u>, 236 F.3d 282, 286 n.4 (5th Cir. 2000), held:

> Plaintiffs appear to argue that *any mere theoretical possibility* of recovery under local law - no matter how remote or fanciful - suffices to preclude removal. We reject this contention. As cited authorities reflect, there must at least be arguably a *reasonable basis* for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder.

<u>Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.</u>, 313 F.3d 305, 312 (5th Cir. 2002) confirmed this point:

> The court determines whether that party has *any possibility of recovery* against the party whose joinder is questioned. If there is arguably a *reasonable basis* for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder. This *possibility, however, must be reasonable*, not merely theoretical.

emphasis added; internal citation and quotations omitted; *citing* <u>Badon</u>).

The court must assume all the facts alleged by plaintiff to be true and resolve all uncertainties regarding state substantive law against defendants. Only if it finds that there is no

possibility that a valid cause of action has been pleaded against the nondiverse defendant will fraudulent joinder be found to exist. Elam, 635 F.3d 796, 813 (5th Cir. 2011) (contested issues of fact and ambiguities of state law regarding possible negligence of train engineer, whose joinder destroyed diversity jurisdiction, had to be resolved in favor of plaintiffs at jurisdictional stage). The plaintiff's lack of affirmative evidence is not fatal at this stage; the burden is on the removing defendant to negate the possibility of recovery against the in-state defendant. Cumpian, 910 F.3d 216, 220–221 (5th Cir. 2018) (plaintiff's lack of affirmative evidence was not fatal to claims against allegedly fraudulently joined contractor at improper-joinder stage; removing defendant's evidence that it prohibited contractors from performing procedure that resulted in plaintiff's injury merely indicated standard workplace rules, which might be ignored in emergency situations).

In fact, the Fifth Circuit reversed a district court for "pre-trying a case to determine removal jurisdiction" rather than using a summary judgment type procedure. Hart v. Bayer Corp., 199 F.3d 239, 243, 246–247 (5th Cir. 1999) (fraudulent joinder claims can be resolved by "piercing the pleadings" and considering summary judgment type evidence; because district court failed to follow this procedure, review limited to allegations in complaint). In Dodson v. Spiliada Maritime Corp.,951 F. 2d 40, 42 (5th Cir. 1992) the Fifth Circuit enunciated the following standard for evaluating claims of fraudulent joinder[30]:

> Where charges of fraudulent joinder are used to establish [federal] jurisdiction, the removing party has the burden of proving the claimed fraud…. To prove their allegation of fraudulent joinder [removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against them in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling state law in favor

---

[30] Hart, 199 F.3d 239, 243, 246-247 (5th Cir. 1999) (applying and quoting Dodson);

of the non-removing party. We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned.

Here, Liberty does not allege any actual fraud by the inclusion of French Settlement in this action. Rather, Liberty seemingly opines the Plaintiffs have not articulated valid and actionable claims against French Settlement. Liberty has not attempted to satisfy its burden of proof by proving by clear and convincing evidence the claims against French Settlement are improper or fraudulent. Without so much as a fig-leaf allegation as to what is improper or fraudulent about the Plaintiffs' claims, Liberty seems to claim it cannot see a "real connection" between itself, French Settlement and the Plaintiffs' lawsuit. In arriving at this conclusion, Liberty does not disclose its agents/employees, who were working on behalf of Liberty and rendering mitigation/remediation, placed all debris and materials from the Plaintiffs' residence onto the yard of the Plaintiffs' residence. In doing so, the company obstructed the water meter and/or access to the water meter[31]. The obstruction of the water meter caused the Plaintiffs to incur unreasonable and unnecessary expenses/fines/fees by French Settlement. The Plaintiffs show they were forced to pay for a thing not due to French Settlement and they seek a return of all such payments from French Settlement[32]. The Plaintiffs show they were assessed a fine/fee of $2,000.00 for a thing not due to French Settlement and they seek a cancellation of said assessment/fine, which may have been filed as lien against the Plaintiffs' immovable property[33].

It appears that Liberty is reading paragraph number 86 of the *Petition for Damages* in a vacuum rather than the *Petition* as a whole. Paragraph 86 provides, "[t]he Defendant, **FRENCH**

---

[31] See, *Petition for Damages*, paragraph number 84.
[32] See, *Petition for Damages*, paragraph number 89.
[33] See, *Petition for Damages*, paragraph number 90.

**SETTLEMENT WATER COMPANY, INC.**, claimed it could not read and/or access the water meter and either assessed or threatened to assess a $2,000.00 fee for debris removal so that its agents/employees could read and access the water meter." Liberty is reading paragraph 86 as speculative or suspensive. When the French Settlement representative spoke to the Plaintiffs, the representative's words were not clear. The Plaintiffs were led to believe that they were either already fined or they were going to be fined $2,000.00. The French Settlement representative indicated if the debris was not removed by an unstated date, the Plaintiffs were to pay $2,000.00. The Plaintiffs had no place to store the debris or the means to remove it and indicated such to the representative, who said they have to pay the assessment/fine. If there is any uncertainty, it rests with the words by the representative of French Settlement. However, just because the Plaintiffs do not know the precise moment in time when French Settlement fined/assessed this fee (then or soon thereafter), that fact does not change the fact they were fined. Likewise, the Plaintiffs lack of knowledge as to when the fine occurred does not vest this Court with jurisdiction.

A reading the *Petition for Damages* in its entirety, reveals "the rest of the story" of the Plaintiffs issue with Liberty and French Settlement. When the Plaintiffs have their day in court, they will present the entirety of their lawsuit and causes of action. They will not rest on just a single provision of their lawsuit, particularly one that was disclosed in chronical order as the events of this case unfolded. In doing so, there is not any uncertainty about the Plaintiffs' *Petition for Damages*, which clearly states: French Settlement arbitrarily and capriciously *charged* the Plaintiffs for water the Plaintiffs were not using due to the actions by the agents/employees of Liberty[34]. The Plaintiffs show they were *forced to pay for a thing not due* to French Settlement and

---

[34] See, Petition for Damages, paragraph number 88.

*they seek a return of all such payments* from French Settlement[35]. The Plaintiffs show they *were assessed a fine/fee of $2,000.00* for a thing not due to French Settlement and *they seek a cancellation of said assessment/fine*, which may have been filed as lien against the Plaintiffs' immovable property[36]. French Settlement took financial advantage of a desperate situation.

To prove Liberty's allegation of fraudulent joinder, it must demonstrate that there is no possibility the Plaintiffs would be able to establish a cause of action against French Settlement in state court. Our civil law system in Louisiana certain allows for the recovery of a thing not due. La. Civil Code Art. 2299; Gootee Constr. Inc. v. Amwest Sur. Ins. Co., 03-0144 (La. 10/10/03), 856 So.2d 1203. French Settlement was not owed money for water usage because the Plaintiffs shut off the main water valve and they were not using any water. French Settlement does not have the right to conjure up a $2,000.00 fine/assessment because the meter-reader could not access the meter. Our law allows for the recovery when someone was unjustly enriched without cause. La. Civil Code Art. 2298; Baker v. Maclay Properties Co., 94-1529, (La. 1/17/95); 648 So. 2d 888, 897. French Settlement was undoubtedly enriched because it arbitrarily charged unreasonable fees for water usage when none was used. Alternatively, Louisiana law allows for recovery when a party abuses its rights to the detriment of another. Insulation Technologies, Inc. v. Indus. Labor & Equip. Servs., 2013-0194 (La.App. 4 Cir. 08/14/13); 122 So. 3d 1146. This is especially true when French Settlement held the Plaintiffs accountable for the action by Liberty's agents and employees, who put the debris in the Plaintiffs' yard and on top of the water meter. The foregoing outlines multiple valid causes of actions, all of which are recognizable under Louisiana law.

---

[35] See, *Petition for Damages*, paragraph number 89.
[36] See, *Petition for Damages*, paragraph number 90.

15

Additionally, French Settlement was directly informed by the Plaintiffs that they were not using water. The Plaintiffs explained their home was functionally destroyed by Hurricane Ida. The Plaintiffs explained the water valve was closed and shut off. Despite the foregoing, French Settlement arbitrarily set a monthly fee for water usage. The fee was significantly more than the average water usage bill. The Plaintiffs show and alleged the actions by French Settlement in arbitrarily up-charging for unused water constitutes: (1) extreme and outrageous conduct by French Settlement, (2) this caused the Plaintiffs severe emotional distress, and (3) French Settlement knew or should have known its conduct would inflict severe emotional distress or, at the least, knew that severe emotional distress would be certain or substantially certain to result from its conduct. White v. Monsanto Co., 585 So. 2d 1205 at 1209 (La. 1991). Alternatively, should the jury not find French Settlement's conduct rises to the level of intentional infliction of emotional distress, it is foreseeable it will find the conduct to be negligent infliction of emotional distress. Either cause of actions is valid or actionable under Louisiana law.

While it could be said that Liberty is responsible for the piling the debris on the water meter, that notion will not come to fruition until there is an adjudication be it a judgment or verdict. While there are certainly factual issues to be resolved, this is hardly a case where any named Defendant so clearly lacks liability as to give rise to a claim of fraudulent joinder. Furthermore, Liberty bears the burden of presenting clear and convincing evidence that the Plaintiffs lack any cognizable claim against French Settlement, the non-diverse party. It has failed to carry its burden and, quite simply, cannot do so as Plaintiffs have stated a viable cause of action and retain a right of recovery against all Defendants named in this action.

In making its overly generalized opinion on fraudulent joinder, Liberty does not demonstrative, by any measure of persuasion, how the Plaintiffs do not have a valid claim against

16

French Settlement. Surely, an argument of "no real connection" does not suffice as evidence. Since Liberty has not alleged any facts or put forth any legal arguments, the Plaintiffs cannot speculate as to why Liberty argues that French Settlement assessing fines and overcharging the Plaintiffs is not actionable under Louisiana law.

Notwithstanding the foregoing issues, Liberty argues the Plaintiffs made "an effort to destroy diversity." *Notice of Removal*, p. 5, number 7. This claim is untrue and mere conjuncture apparently included to impugn the Plaintiffs and/or the undersigned, who has initiated and litigated many federal cases. Nevertheless, the issue of a plaintiff's would-be and speculative motive for including other party-defendants has long been decided. Apropos, a plaintiff's motive is simply immaterial to any determination regarding fraudulent joinder. See, Harris v. Great Lakes Steel Corp., 752 F. Supp. 244, 246 (E.D. Mich. 1990); Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C., 176 F.3d 904 (6th Cir. 1999). Thus, any suggestion in contravention to this well-established rule should be disregarded as legally incorrect and simply untrue.

### e) *Liberty Mistakenly Relies on Lack of Service as A Basis to Vest Federal Court Jurisdiction*

Liberty mistakenly concludes French Settlement's involvement in this case "must be disregarded for purposes of determining diversity jurisdiction" because it "has not been served." *Notice of Removal*, p. 4, number 2; p. 6, number 9. Liberty does not cite a single law or case in support of its claim. This is likely due to the absence of any supporting law. However, Liberty is obligated to disclose the operative law, even when it is unfavorable.

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . ." 28 U.S.C. § 1441(a). Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations

contained in the complaint. St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed . . ."). It is a fundamental principle of law that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed." See In re Carter, 618 F.2d 1093, 1101 (5th Cir. 1980) (*citing* Pullman Co. v. Jenkins, 305 U.S. 534, 537-38, 59 S. Ct. 347, 83 L. Ed. 334 (1939)). The removal statute distinguishes between served and un-served defendants solely for the purpose of consent to removal. See, 28 U.S.C. § 1446(d).

To be clear, "[t]he United States Supreme Court has held that the citizenship of all defendants, whether served with process or not, is to be considered when determining whether complete diversity exists in a removed lawsuit." In re Norplant Contraceptive Prod. Liab. Litig., 889 F. Supp. 271, 273 (E.D. Tex. 1995) (*citing* Pullman, 305 U.S. at 541); see also, New York Life Ins. Co. v. Deshotel, 142 F.3d 873, 883 (5th Cir. 1998) ("A non-resident [and diverse] defendant cannot remove an action if the citizenship of any co-defendant, joined by the plaintiff in good faith, destroys complete diversity, regardless of service or non-service upon the co-defendant. Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service."); Aydell v. Sterns, 677 F. Supp. 877, 879 (M.D. La. 1988) ("We begin by recognizing that the simple fact that a resident [and non-diverse] defendant has not yet been served does not, in and of itself, entitle a non-resident [and diverse] defendant to remove.") (*citing* Pullman, 305 U.S. 534, 59 S. Ct. 347, 83 L. Ed. 334); Howell v. Tribune Entertainment Co., 106 F.3d 215, 217 (7th Cir. 1997); Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Pecherski v. General Motors Corp., 636 F.2d 1156, 1160 & n.6 (8th Cir. 1981); Preaseau v. Prudential Ins. Co., 591 F.2d 74, 78-79 (9th Cir. 1979); Clarence E. Morris, Inc. v. Vitek, 412 F.2d 1174, 1176 (9th Cir. 1969); see

also Everett v. MTD Products, Inc., 947 F. Supp. 441, 442 & n.1 (N.D. Ala. 1996); In re Norplant Contraceptive Products Liability Litigation, 889 F. Supp. 271, 273-76 (E.D. Tex. 1995); Zaini v. Shell Oil Co., 853 F. Supp. 960, 963 (S.D. Tex. 1994); Kelly v. Drake Beam Morin, Inc., 695 F. Supp. 354, 357 (E.D. Mich. 1988); Schwegmann Bros. Giant Super Mkts. Inc. v. Pharmacy Reports, Inc., 486 F. Supp. 606, 614-15 (E.D. La. 1980); See also, Port v. Loney, Civil Action No. 16-100, 2017 U.S. Dist. 103026 (M.D. La. May 18, 2017) ("To be clear, '[t]he United States Supreme Court has held that the citizenship of all defendants, whether served with process or not, is to be considered when determining whether complete diversity exists in a removed lawsuit.'"); Parault v. Ins. Co. of Pa., No. 18-1053-BAJ-EWD, 2018 U.S. Dist. LEXIS 215478 (M.D. La. Dec. 20, 2018)

Based on the foregoing, the citizenship of French Settlement cannot be ignored on the basis that it was not served at the time of removal. French Settlement is a citizen of and domiciled in Louisiana[37]. Liberty has not argued or suggested otherwise, and with good reason.

### *Request for Expenses, Cost and Attorney's Fees*

The Plaintiffs submit that this Honorable Court does not have subject matter jurisdiction over this matter. The Plaintiffs show this case should not have been removed. As a result of this wrongful removal, counsel for the Plaintiffs was compelled to devote time and expenses to prepare a *Motion to Remand* and a *Memorandum In Support of Motion to Remand*. As this Court is aware, 28 U.S.C. 1447 § (c) permits this Court to require Liberty to pay "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The undersigned attorney rendered approximately 8 hours at an hourly rate of $300.00 to prepare the pleadings responsive to the

---

[37] See, *Petition for Damages*, paragraph 1 (B). Liberty does not dispute French Settlement is a citizen of and domiciled in Louisiana.

*Notice of Removal.* The Plaintiffs respectfully request that this Court order Liberty to pay all such costs, expenses and attorney's fees.

## *Conclusion*

For the aforementioned reasons and authorities cited Liberty has failed to present sufficient evidence to demonstrate the fraudulent joinder of any party or, in any other way establish, that removal of this action was proper. Accordingly, Plaintiffs respectfully request the issuance of an *Order* remanding this action back to the 21st Judicial District Court for the Parish of Livingston, State of Louisiana. Furthermore, as it is apparent Liberty lacked any reasonable basis for the removal of this action, Plaintiffs also request they be awarded their costs, expenses and reasonable attorney fees incurred as a result thereof.

Respectfully submitted:

THE DAVENPORT FIRM, APLC

THOMAS D. DAVENPORT, JR.
Bar Roll No. 27426
602 Murray Street
Alexandria, Louisiana 71301
Telephone: (318) 445 - 9696
Facsimile: (318) 445 – 3031
tdavenportjr@davenportfirm.com[38]

---

[38] The inclusion of this email address is not an express designation and agreement to accept pleadings, motions, discovery, evidence or material via email.